FILED by ___ D.C.

JAN 28 2014

STEVEN M. LARIMORE
CLERK U. S. DIST. CT
S. D. of FLA. – MIAMI

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. ___14-20052___

18 U.S.C. § 1349
18 U.S.C. § 371
42 U.S.C. § 1320a-7b(b)(1)(A)
18 U.S.C. § 1956(h)
18 U.S.C. § 1956(a)(1)(B)(i)
18 U.S.C. § 1028A(a)(1)
18 U.S.C. § 2
18 U.S.C. § 982

CR-MARTINEZ

MAGISTRATE JUDGE
GARBER

UNITED STATES OF AMERICA

vs.

**NELSON ROJAS,**
**ROGER BERGMAN, and**
**RODOLFO SANTAYA,**

          Defendants.
_____/

## INDICTMENT

The Grand Jury charges that:

## GENERAL ALLEGATIONS

At all times relevant to this Indictment,

1.    The Medicare Program ("Medicare") is a federal health care program providing benefits to persons who were over the age of sixty-five or disabled.  Medicare is administered by the Centers for Medicare and Medicaid Services ("CMS"), a federal agency under the United States Department of Health and Human Services.  Individuals who receive benefits under Medicare are referred to as Medicare "beneficiaries."  Medicare is a "health care benefit program," as defined by Title 18, United States Code, Section 24(b).

2.    Part B of the Medicare program covers partial hospitalization programs ("PHPs") connected with the treatment of mental illness.  The treatment program of PHPs closely

resembles that of a highly structured, short-term hospital inpatient program, but it is a distinct and organized intensive treatment program that offers less than 24-hour daily care and is designed, in part, to reduce medical costs by treating qualifying individuals outside the hospital setting.

3.     Under the PHP benefit, Medicare covers the following services:  (1) individual and group therapy with physicians or psychologists (or other authorized mental health professionals); (2) occupational therapy; (3) services of social workers, trained psychiatric nurses, and other staff trained to work with psychiatric patients; (4) drugs and biologicals furnished for therapeutic purposes that cannot be self-administered; (5) individualized activity therapies that are not primarily recreational or diversionary; (6) family counseling (for treatment of the patient's condition); (7) patient training and education; and (8) diagnostic services.

4.     Medicare generally requires that the PHP be provided at a facility that is hospital-based or hospital-affiliated, but Medicare also allows a PHP to be provided in a Community Mental Health Center ("CMHC"), which is a provider type under Part A of Medicare.

5.     Medicare requires that, to qualify for the PHP benefit, the services must be reasonable and necessary for the diagnosis and active treatment of the individual's condition. The program also must be reasonably expected to improve or maintain the condition and functional level of the patient and to prevent relapse or hospitalization.  The program must be prescribed by a physician and furnished under the general supervision of a physician and under an established plan of treatment that meets Medicare requirements.

6.     Typically, a patient who needs this intensive PHP treatment has a long history of mental illness that has been treated.  Patients are ordinarily referred either (a) by a hospital after

full inpatient hospitalization for severe mental illness or (b) by a doctor who is trying to prevent full inpatient hospitalization for a severely mentally ill patient the doctor has been treating.

7.     Medicare does not cover programs involving primarily social, recreational, or diversionary activities.

8.     In order to receive payment from Medicare, a CMHC, medical clinic, or physician is required to submit a health insurance claim form to Medicare, called a Form 1450. The claims may be submitted in hard copy or electronically. A CMHC, medical clinic, and physician may contract with a billing company to transmit claims to Medicare on their behalf.

9.     Medicare Part B is administered in Florida by a government contractor which, pursuant to contract with the United States Department of Health and Human Services, serves as an agent on behalf of the United States Department of Health and Human Services to receive, adjudicate, and pay Medicare Part B claims submitted to it by Medicare beneficiaries, physicians, or CMHCs. Medicare Part B pays CMHCs and physicians directly for the cost of PHP services furnished to eligible Medicare beneficiaries, provided that the services meet Medicare requirements.

### Relevant Entities And Defendants

10.     American Therapeutic Corporation ("ATC") was a Florida corporation originally established in 2002 and was headquartered in Miami, Florida. ATC operated several purported PHPs throughout Florida from Homestead to Orlando, including PHPs at the following addresses: 1801 NE 2nd Avenue, Miami, Florida 33132; 61 Grand Canal Drive, Suite #100, Miami, Florida 33144; 1001 West Commercial Blvd., Fort Lauderdale, Florida 33309; 4960 North Dixie Highway, Fort Lauderdale, Florida 33334; 27112 South Dixie Highway, Naranja, Florida 33032; 717 East Palmetto Park Road, Boca Raton, Florida 33432; and 4790 North Orange Blossom Trail, Orlando, Florida 32810.

11.     Medlink Professional Management Group, Inc. ("Medlink") was a Florida corporation established in 2003 and was headquartered at 484 Brickell Avenue, Suite 1220, Miami, Florida 33132 and later at 1809 NE 2nd Avenue, Miami, Florida 33132.  Medlink was used to charge monthly fees to ATC for managing ATC's operations, including hiring employees, running daily operations, and controlling finances and other site management activities.

12.     South Dade Trade Interprises Corporation ("SDTI") was a Florida corporation established in 2001 and headquartered at 2345 West 52nd Street, Hialeah, Florida 33016.  SDTI was a check cashing business that, among other things, was used by owners, operators, and employees of ATC and Medlink to facilitate the payment of cash bribes and kickbacks.  SDTI was involved in both interstate and foreign commerce.

13.     Defendant **NELSON ROJAS**, a resident of Miami-Dade County, was a co-owner of SDTI.

14.     Defendant **ROGER BERGMAN**, a resident of Miami-Dade County, was, among other things, licensed by the State of Florida as a physician's assistant.

15.     Defendant **RODOLFO SANTAYA** was a resident of Miami-Dade County and licensed by the State of Florida as a certified nurse's assistant.

### COUNT 1
**Conspiracy to Commit Health Care Fraud and Wire Fraud**
**(18 U.S.C. § 1349)**

1.     Paragraphs 1 through 11 and 14 through 15, of the General Allegations section of this Indictment are realleged and incorporated by reference as though fully set forth herein.

2.     From in or around December 2002 to at least in or around October 2010, in Miami-Dade County, in the Southern District of Florida and elsewhere, the defendants,

**ROGER BERGMAN**
**and**
**RODOLFO SANTAYA,**

did knowingly and willfully combine, conspire, confederate, and agree with each other, and with others known and unknown to the Grand Jury, to commit certain offenses against the United States, that is:

        a.      To knowingly and willfully execute a scheme and artifice to defraud a health care benefit program affecting commerce, as defined in Title 18, United States Code, Section 24(b), that is, Medicare, and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of, said health care benefit program, in connection with the delivery of and payment for health care benefits, items, and services, in violation of Title 18, Unites States Code, 1347; and

        b.      To knowingly and with the intent to defraud devise and intend to devise a scheme and artifice to defraud, and for obtaining money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing that the pretenses, representations and promises were false and fraudulent when made, and did knowingly transmit and cause to be transmitted, by means of wire communication in interstate commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, in violation of Title 18, United States Code, Section 1343.

## PURPOSE OF THE CONSPIRACY

        3.      It was a purpose of the conspiracy for **ROGER BERGMAN, RODOLFO SANTAYA,** and their co-conspirators, to unlawfully enrich themselves by, among other things: (a) submitting and causing the submission of false and fraudulent claims to Medicare through ATC's CMHCs; (b) offering and paying kickbacks and bribes (i) to Patient Recruiters in

exchange for the referral of Medicare beneficiaries to ATC's CMHCs, (ii) to Medicare beneficiaries to secure their attendance at ATC's CMHCs, and (iii) to clinical personnel to order and/or arrange for the provision of services to Medicare beneficiaries; (c) concealing the fraud and kickbacks through the creation of false and fraudulent documents; and (d) receiving and diverting the proceeds of the fraud for the personal use and benefit of the defendants and their co-conspirators in the form of compensation and other remuneration.

## MANNER AND MEANS OF THE CONSPIRACY

The manner and means by which the defendants and their co-conspirators sought to accomplish the objects and purpose of the conspiracy included, among others, the following:

4. From in or around December 2002 through in or around at least October 2010, **ROGER BERGMAN, RODOLFO SANTAYA,** and others caused ATC to submit tens of millions of dollars in false, fictitious, and fraudulent claims to Medicare, using interstate wire communications: (1) for Medicare beneficiaries (i.e., "patients") and Medicare services procured through bribes and kickbacks; (2) for patients who did not need or qualify for PHP treatment; (3) for patients who did not receive legitimate PHP treatment, or any PHP treatment at all; and (4) based on falsified medical records of ATC.

5. To assist ATC in billing Medicare, **ROGER BERGMAN** caused Medicare beneficiaries to be admitted to ATC's CMHCs whom he knew did not qualify for PHP treatment.

6. **ROGER BERGMAN** caused Medicare beneficiaries to be prescribed unnecessary medications and medications in unnecessary doses to make it appear to Medicare and others that the Medicare beneficiaries needed and qualified for PHP treatment. **ROGER BERGMAN** falsified patient records in order to make it appear as though patients needed PHP treatment, qualified for PHP treatment, and received legitimate PHP treatment when they did not.

7.      **ROGER BERGMAN** was paid bribes and kickbacks by co-conspirators at ATC

to author, complete, and sign medical documentation.

8.      **RODOLFO SANTAYA** was paid bribes and kickbacks by co-conspirators at

ATC in exchange for referring Medicare beneficiaries to ATC's CMHCs.

9.      **RODOLFO SANTAYA** referred Medicare beneficiaries to ATC whom he knew

did not need, qualify, or receive PHP treatment.

All in violation of Title 18, United States Code, Section 1349.

## COUNT 2
### Conspiracy to Make False Statements Relating to Health Care Matters
### (18 U.S.C. § 371)

1.      Paragraphs 1 through 10 and 14, of the General Allegations section of this

Indictment are realleged and incorporated by reference as though fully set forth herein.

2.      From in or around December 2002 to at least in or around October 2010, in

Miami-Dade County, in the Southern District of Florida and elsewhere, the defendant,

**ROGER BERGMAN,**

did knowingly and willfully combine, conspire, confederate, and agree with others known and

unknown to the Grand Jury, to commit certain offenses against the United States, that is:

a.      To knowingly and willfully falsify, conceal, and cover up by any trick,

scheme, and device a material fact in connection with the delivery of and payment for health care

benefits, items, and services involving a health care benefit program, that is, Medicare, in

violation of Title 18, United States Code Section 1035(a)(1); and

b.      To knowingly and willfully make and use a materially false writing and

document, knowing the same to contain materially false, fictitious, and fraudulent statements and

entries, in connection with the delivery of and payment for health care benefits, items, and

services involving a health care benefit program, that is, Medicare, in violation of Title 18, United States Code Section 1035(a)(2).

## PURPOSE OF THE CONSPIRACY

3.    It was a purpose of the conspiracy for the defendant and his co-conspirators to unlawfully enrich themselves by:  (a) concealing the fact that Medicare beneficiaries did not receive legitimate PHP treatment at ATC; (b) causing false information to be written in medical documents at ATC to make it appear as though Medicare beneficiaries at ATC received legitimate PHP treatment; and (c) causing false medical documents to be created at ATC to make it appear as though Medicare beneficiaries at ATC received legitimate PHP treatment, all so ATC could fraudulently bill Medicare.

## MANNER AND MEANS OF THE CONSPIRACY

The manner and means by which the defendant and his co-conspirators sought to accomplish the object and purpose of the conspiracy included, among others, the following:

4.    **ROGER BERGMAN** caused Medicare beneficiaries to be admitted to ATC's CMHCs whom he knew did not qualify for PHP treatment.

5.    **ROGER BERGMAN** provided inappropriate and non-reimbursable treatment to Medicare beneficiaries at ATC whom he knew did not qualify for PHP treatment.

6.    **ROGER BERGMAN** caused Medicare beneficiaries to be prescribed unnecessary medications and medications in unnecessary doses to make it appear to Medicare and others that the Medicare beneficiaries needed and qualified for PHP treatment.

7.    To justify ATC's billings to Medicare, **ROGER BERGMAN** falsified patient records, in part and in whole, to make it appear as though patients needed PHP treatment, qualified for PHP treatment, and received legitimate PHP treatment when they did not.

## OVERT ACTS

In furtherance of the conspiracy, and to accomplish its objects and purpose, at least one of the conspirators committed and caused to be committed in the Southern District of Florida at least one of the following overt acts, among others:

1.     On or about September 10, 2007, **ROGER BERGMAN** received ATC check #21531 in the approximate amount of $4,147.

2.     On or about April 7, 2008, **ROGER BERGMAN** received ATC check #25459 in the approximate amount of $3,844.

3.     On or about February 3, 2009, a co-conspirator, Dr. Alan Gumer, falsified medical documentation for patient R.D.

4.     On or about February 18, 2009, a co-conspirator, Dr. Alan Gumer, falsified medical documentation for patient P.R.

All in violation of Title 18, United States Code, Section 371.

## COUNT 3
**Conspiracy to Pay and Receive Bribes and Kickbacks in Connection with a**
**Federal Health Care Benefit Program**
**(18 U.S.C. § 371)**

1.     Paragraphs 1 through 13 and 15, of the General Allegations section of this Indictment are realleged and incorporated by reference as though fully set forth herein.

2.     From in or around December 2002 to at least in or around October 2010, in Miami-Dade County, in the Southern District of Florida and elsewhere, the defendants,

**NELSON ROJAS**
**and**
**RODOLFO SANTAYA,**

did knowingly and willfully combine, conspire, confederate, and agree with each other, and with others known and unknown to the Grand Jury, to commit certain offenses against the United States, that is:

        a.      To knowingly and willfully offer and pay remuneration, including kickbacks and bribes, directly and indirectly, overtly and covertly, in cash and in kind, to any person to induce such person to refer an individual to a person for the furnishing and arranging for the furnishing of any item and service for which payment may be made in whole and in part by a Federal health care program, that is, Medicare, in violation of Title 42, United States Code, Section 1320a-7b(b)(2)(A); and

        b.      To knowingly and willfully solicit and receive remuneration, including kickbacks and bribes, directly and indirectly, overtly and covertly, in cash and in kind, in return for referring an individual to a person for the furnishing and arranging for the furnishing of any item and service for which payment may be made in whole and in part by a Federal health care program, that is, Medicare, in violation of Title 42, United States Code, Section 1320a-7b(b)(1)(A).

## PURPOSE OF THE CONSPIRACY

        3.      It was a purpose of the conspiracy for the defendants and their co-conspirators to unlawfully enrich themselves by receiving and paying bribes and kickbacks in exchange for: (1) referring Medicare beneficiaries to ATC's CMHCs so that ATC could bill Medicare for these Medicare beneficiaries; and (2) ordering and arranging for purported PHP treatment to be provided to Medicare beneficiaries at ATC so that Medicare could bill for these Medicare beneficiaries.

## MANNER AND MEANS OF THE CONSPIRACY

The manner and means by which the defendants and their co-conspirators sought to accomplish the object and purpose of the conspiracy included, among others, the following:

4.      **NELSON ROJAS** cashed checks through SDTI for co-conspirators at ATC. **NELSON ROJAS** provided the cash from these transactions to co-conspirators at ATC, so that co-conspirators at ATC could pay bribes and kickbacks to Patient Recruiters in exchange for the referral of Medicare beneficiaries to ATC.

5.      **RODOLFO SANTAYA** was paid bribes and kickbacks by co-conspirators at ATC in exchange for referring Medicare beneficiaries to ATC.

6.      **NELSON ROJAS** and **RODOLFO SANTAYA** caused ATC to submit claims to Medicare for PHP services purportedly rendered to Medicare beneficiaries who were procured through the payment of bribes and kickbacks.

7.      **NELSON ROJAS** and **RODOLFO SANTAYA** caused monies to be paid by Medicare to ATC based upon claims submitted by ATC to Medicare for Medicare beneficiaries who were procured through the payment of bribes and kickbacks.

## OVERT ACTS

In furtherance of the conspiracy, and to accomplish its objects and purpose, at least one of the conspirators committed and caused to be committed in the Southern District of Florida at least one of the following overt acts, among others:

1.      On or about February 25, 2009, **NELSON ROJAS** caused Medlink Check #7051, written to "G.A.B." in the approximate amount of $3,809, to be processed through SDTI.

2.      On or about February 25, 2009, **NELSON ROJAS** caused Medlink Check #7052, written to "P.C.S." in the approximate amount of $3,809, to be processed through SDTI.

3.      On or about March 4, 2009, **NELSON ROJAS** caused Medlink Check #7123, written to "Y.C." in the approximate amount of $2,857, to be processed through SDTI.

4.      In or around May 2009, **RODOLFO SANTAYA** received a cash bribe payment of approximately $9,495 from ATC.

5.      In or around June 2009, **RODOLFO SANTAYA** received a cash bribe payment of approximately $8,230 from ATC.

All in violation of Title 18, United States Code, Section 371.

### COUNTS 4-5
### Receipt of Bribes and Kickbacks in Connection with a
### Federal Health Care Benefit Program
### (42 U.S.C. § 1320a-7b(b)(1)(A))

1.      Paragraphs 1 through 12 and 15, of the General Allegations section of this Indictment are realleged and incorporated by reference as though fully set forth herein.

2.      On or about the dates enumerated below, in Miami-Dade County, in the Southern District of Florida and elsewhere, the defendant,

**RODOLFO SANTAYA,**

did knowingly and willfully solicit and receive remuneration, that is, kickbacks and bribes, directly and indirectly, overtly and covertly, in the form of cash, in return for referring an individual to a person for the furnishing and arranging for the furnishing of any item and service for which payment may be made in whole and in part under a Federal health care program, that is, Medicare, as set forth below:

| Count | Date of Payment | Approximate Amount | Description |
|-------|-----------------|--------------------|-------------|
| 4     | May 2009        | $9,495             | Cash payment of $9,495 from ATC |
| 5     | July 2009       | $8,230             | Cash payment of $8,230 from ATC |

In violation of Title 42, United States Code, Section 1320a-7b(b)(1)(A) and Title 18, United States Code, Section 2.

### COUNT 6
### Conspiracy to Commit Money Laundering
### (18 U.S.C. § 1956(h))

1.      Paragraphs 1 through 13 of the General Allegations section of this Indictment are realleged and incorporated by reference as though fully set forth herein.

2.      From in or around December 2002 and continuing through at least in or around October 2010, in Miami-Dade County, in the Southern District of Florida and elsewhere, the defendant,

**NELSON ROJAS,**

did knowingly and willfully combine, conspire, confederate, and agree with others known and unknown to the Grand Jury, to commit certain offenses against the United States, that is:

a.      To knowingly conduct a financial transaction affecting interstate and foreign commerce, which financial transaction involved the proceeds of specified unlawful activity, knowing that the property involved in the financial transaction represented the proceeds of some form of unlawful activity, and knowing that the transaction was designed, in whole and in part, to conceal and disguise the nature, the location, the source, the ownership, and the control of the proceeds of specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i); and

b.      To knowingly conduct a financial transaction affecting interstate and foreign commerce, which financial transaction involved the proceeds of specified unlawful activity, knowing that the property involved in the financial transaction represented the proceeds of some form of unlawful activity, and knowing that the transaction was designed, in whole and

in part, to avoid a transaction reporting requirement under State and Federal law, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(ii).

It is further alleged that the specified unlawful activity is health care fraud, in violation of Title 18, United States Code, Section 1347, and wire fraud, in violation of Title 18, United States Code, Section 1343.

## PURPOSE OF THE CONSPIRACY

3.     It was a purpose of the conspiracy for the defendant and his co-conspirators to engage in money laundering for the purpose of:  (1) unlawfully enriching himself and his co-conspirators; (2) providing cash to ATC and other co-conspirators so that ATC could pay cash bribes and kickbacks in exchange for securing the referral of Medicare beneficiaries to ATC so that ATC could bill Medicare for services that were not medically necessary and not provided; (3) concealing and disguising the nature, location, source, ownership, and control of the cash bribe and kickback payments; and (4) avoiding State and Federal transaction reporting requirements.

## MANNER AND MEANS OF THE CONSPIRACY

The manner and means by which the defendant and his co-conspirators sought to accomplish the object and purpose of the conspiracy included, among others, the following:

4.     To further the fraud scheme, **NELSON ROJAS**, his co-conspirators at ATC, and others caused Patient Recruiters to be paid from monies initially received by ATC from Medicare and subsequently transferred from ATC to Medlink.

5.     To conceal the fraud scheme from Medicare, **NELSON ROJAS,** his co-conspirators at ATC, and others created fake documents in Medlink's books and records to make it appear that certain individuals worked at Medlink, when in fact they did not (the "Sham Employees").

14

6.      Co-conspirators at ATC then wrote checks, in the guise of regular salaried payments and for amounts under ten-thousand dollars ($10,000), from Medlink's bank accounts to the Sham Employees.  The Medlink checks were cashed by co-conspirators at ATC through SDTI and **NELSON ROJAS**.

7.      To further the fraud scheme, cash generated from these transactions was provided by **NELSON ROJAS** to co-conspirators at ATC for the purpose of paying Patient Recruiters and others.

All in violation of Title 18, United States Code, Section 1956(h).

### COUNTS 7-9
### Money Laundering
### (18 U.S.C. § 1956(a)(1)(B)(i))

1.      Paragraphs 1 through 13 of the General Allegations section of this Indictment are realleged and incorporated by reference as though fully set forth herein.

2.      On or about the dates set forth below, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendant,

### NELSON ROJAS,

did knowingly conduct and attempt to conduct a financial transaction affecting interstate commerce, which financial transaction involved the proceeds of specified unlawful activity, knowing that the property involved in the financial transaction represented the proceeds of some form of unlawful activity, and knowing that the transaction was designed, in whole and in part, to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity, as set forth below:

| Count | Description of Financial Transaction | Approximate Date of Transaction |
|---|---|---|
| 7 | Medlink check #7051, written to "G.A.B." in the approximate amount of $3,809, cashed through SDTI | February 25, 2009 |
| 8 | Medlink check #7052, written to "P.C.S." in the approximate amount of $3,809, cashed through SDTI | February 25, 2009 |
| 9 | Medlink check #7123, written to "Y.C." in the approximate amount of $2857, cashed through SDTI | March 4, 2009 |

It is further alleged that the specified unlawful activity is health care fraud, in violation of Title 18, United States Code, Section 1347, and wire fraud, in violation of Title 18, United States Code, Section 1343.

In violation of Title 18, United States Code, Sections 1956(a)(1)(B)(i) and 2.

### COUNT 10
### Aggravated Identity Theft
### (18 U.S.C. § 1028A(a)(1))

1.      Paragraphs 1 through 13 of the General Allegations section of this Indictment are realleged and incorporated by reference as though fully set forth herein.

2.      On or about February 25, 2009, in Miami-Dade County, in the Southern District of Florida and elsewhere, the defendant,

**NELSON ROJAS,**

during and in relation to a felony violation of Title 18, United States Code Section 1349, that is conspiracy to commit health care fraud and wire fraud, as alleged in Count 1, did knowingly possess, transfer, and use, without lawful authority, a means of identification of another person, knowing that the means of identification belonged to another, actual, person, as described below:

16

| **Means of Identification**<br>**(Name & Social Security Number)** |
|---|
| G.A.B., XXX-XX-0017 |

In violation of Title 18, United States Code Sections 1028A(a)(1) and 2.

### FORFEITURE
### (18 U.S.C. § 982)

1.      The General Allegations Section of this Indictment and the allegations set forth in Counts 1 and 6 through 9 are realleged and incorporated by reference as though fully set forth herein for the purpose of alleging forfeiture to the United States of America of certain property in which **NELSON ROJAS, ROGER BERGMAN,** and **RODOLFO SANTAYA** have an interest.

2.      Upon conviction of any of Counts 1 or 2, as alleged in this Indictment, the defendants, **NELSON ROJAS, ROGER BERGMAN,** and **RODOLFO SANTAYA** shall forfeit to the United States any property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of the offense pursuant to Title 18, United States Code, Section 982(a)(7).

3.      Upon conviction of any of Counts 6 through 9, as alleged in this Indictment, the defendant, **NELSON ROJAS,** shall forfeit to the United States any property, real or personal, that is involved in the offense, or any property traceable to such property pursuant to Title 18, United States Code, Section 982(a)(1).  This sum may be sought as a money judgment.

4.      If any of the property described above, as a result of any act or omission of the defendants:

        a.   cannot be located upon the exercise of due diligence;

        b.   has been transferred or sold to, or deposited with, a third party;

        c.   has been placed beyond the jurisdiction of the court;

    d.  has been substantially diminished in value; or

    e.  has been commingled with other property which cannot be divided without

difficulty,  the United States of America shall be entitled to forfeiture of

substitute property pursuant to Title 21, United States Code, Section 853(p),

as incorporated by Title 18, United States Code, Section 982(b)(1).

    All pursuant to Title 18, United States Code, Sections 982(a)(1)(a)(7), and the procedures

outlined in Title 21, United States Code, Section 853, made applicable by Title 18, United States

Code, Section 982(b).

A TRUE BILL

_____
FOREPERSON

_____
WIFREDO A. FERRER
UNITED STATES ATTORNEY
SOUTHERN DISTRICT OF FLORIDA

_____
ROBERT A. ZINK
ASSISTANT CHIEF
CRIMINAL DIVISION, FRAUD SECTION
U.S. DEPARTMENT OF JUSTICE

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

| UNITED STATES OF AMERICA | CASE NO. |
|---|---|

vs.

**CERTIFICATE OF TRIAL ATTORNEY\***

NELSON ROJAS, et al.,

_____ /
                 Defendants.

**Superseding Case Information:**

**Court Division:** (Select One)

| | | | |
|---|---|---|---|
| X | Miami | ____ | Key West |
| ____ | FTL | ____ | WPB | ____ FTP |

New Defendant(s)              ____   No   X
Number of New Defendants   ____
Total number of counts       ____

I do hereby certify that:

1.   I have carefully considered the allegations of the indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.

2.   I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, Title 28 U.S.C. Section 3161.

3.   Interpreter:        (Yes or No)        Yes
     List language and/or dialect           Spanish

4.   This case will take   15   days for the parties to try.

5.   Please check appropriate category and type of offense listed below:

(Check only one)                                     (Check only one)

| | | | | | |
|---|---|---|---|---|---|
| I | 0 to 5 days | ____ | Petty | ____ |
| II | 6 to 10 days | ____ | Minor | ____ |
| II | 11 to 20 days | X | Misdem. | ____ |
| IV | 21 to 60 days | ____ | Felony | X |
| V: | 61 days and over | ____ | | |

6.   Has this case been previously filed in this District Court?   (Yes or No)   No
If yes:
Judge:                                          Case No.
(Attach copy of dispositive order)
Has a complaint been filed in this matter?      (Yes or No)   No
If yes:
Magistrate Case No.
Related Miscellaneous numbers:
Defendant(s) in federal custody as of
Defendant(s) in state custody as of
Rule 20 from the _____        District of

Is this a potential death penalty case? (Yes or No)   No

7.   Does this case originate from a matter pending in the Northern Region of the U.S. Attorney's Office prior to October 14, 2003?   ____   Yes   X   No

8.   Does this case originate from a matter pending in the Central Region of the U.S. Attorney's Office prior to September 1, 2007?   ____   Yes   X   No

ROBERT A. ZINK
TRIAL ATTORNEY, ASSISTANT CHIEF, U.S. DEPT. OF JUSTICE
FL Special Bar No. A5501735

\*Penalty Sheet(s) attached

REV 4/8/08

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### PENALTY SHEET

**Defendant's Name: NELSON ROJAS**

**Case No**:

Count #: 2

Conspiracy to Pay and Receive Bribes and Kickbacks in Connection with a Federal Health Care Benefit Program

Title 18, United States Code, Section 371

**\*Max. Penalty:**    Five (5) years' imprisonment

Count #: 6

Conspiracy to Commit Money Laundering

Title 18, United States Code, Section 1956(h)

**\*Max. Penalty:**    Twenty (20) years' imprisonment

Counts #: 7-9

Money Laundering

Title 18, United States Code, Section 1956(a)(1)(B)(i)

**\*Max. Penalty:**    Twenty (20) years' imprisonment to each count

Count #: 10

Aggravated Identity Theft

Title 18, United States Code, Section 1028A(a)(1)

**\* Max. Penalty**:    Two (2) years' imprisonment

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

**Defendant's Name: ROGER BERGMAN**

**Case No**: 

Count #: 1

Conspiracy to Commit Health Care Fraud and Wire Fraud

Title 18, United States Code, Section 1349

**\* Max. Penalty**:      Twenty (20) years' imprisonment

Count #: 2

Conspiracy to Make False Statements Relating to Health Care Matters

Title 18, United States Code, Section 371

**\*Max. Penalty**:      Five (5) years' imprisonment

Counts #:

**\*Max. Penalty:**

Counts #:

**\*Max. Penalty:**

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### PENALTY SHEET

**Defendant's Name**: **RODOLFO SANTAYA**

**Case No**:

Count #: 1

Conspiracy to Commit Health Care Fraud and Wire Fraud

Title 18, United States Code, Section 1349

**\* Max. Penalty**:     Twenty (20) years' imprisonment

Count #: 3

Conspiracy to Pay and Receive Bribes and Kickbacks in Connection with a Federal Health Care Bennefit Program

Title 18, United States Code, Section 371

**\*Max. Penalty:**     Five (5) years' imprisonment

Counts #: 4-5

Receipt of Bribes and Kickbacks in Connection with a Federal Health Care Benefit Program

Title 42, United States Code, Section 1320a-7b(b)(1)(A)

**\*Max. Penalty:**     Five (5 ) years' imprisonment to each count

Counts #:

**\*Max. Penalty:**

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**